### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TASHAI HUDSON** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO.:** |
| **v.** | : | |
| | : | **Jury Trial Demanded** |
| **PHILADELPHIA POLICE DEPARTMENT** | : | |
| | : | |
| **Defendant.** | : | |

### ORIGINAL COMPLAINT

Plaintiff Tashai Hudson, by undersigned counsel, seeks all available relief against Defendant under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA"), as amended by 29 U.S.C. § 218d (collectively, the "PUMP Act"), for Defendant's failure to accommodate Plaintiff expressing breast milk for her nursing child, and for retaliating against her after she asserted her rights under the PUMP Act.

### JURISDICTION AND VENUE

1.      Jurisdiction over Plaintiff's FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.  Any claims arising under state law are properly before this Court pursuant to 28 U.S.C. § 1367.

2.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.  The events giving rise to Plaintiff's claims occurred within this District, and Defendant conducts business in this District.

### PARTIES

3.      Plaintiff Tashai Hudson ("Hudson" or "Plaintiff") is an adult female currently residing in Philadelphia, Pennsylvania.  She was employed by Defendant in its 911 Dispatch Unit,

from on or about February 2022 through on or about December 2025.  Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented in writing to being a party plaintiff in this action.  *See* Ex. A.

4.    Defendant Philadelphia Police Department ("PPD" or "Defendant") is a "public agency," 29 U.S.C. § 203(x), an "enterprise engaged in commerce or in the production of goods for commerce," 29 U.S.C. § 203(s)(1), and an "employer," 29 U.S.C. § 203(d).

5.    Defendant is a public police agency serving the City of Philadelphia, a political subdivision of the City of Philadelphia.

6.    Defendant employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

## FACTS

7.    In approximately February 2022, Defendant hired Plaintiff as a dispatch worker in its 911 Dispatch Unit.

8.    On May 20, 2023, Plaintiff gave birth to a baby girl named Chloe.  Immediately after Chloe was born, Plaintiff breast-fed her, and also pumped breastmilk intended for feeding Chloe.

9.    From approximately mid to late May 2023 through approximately mid to late July 2023 (at which time she resumed her normal work schedule), Plaintiff was out of work on family leave.

10.    In its 911 response unit, Defendant has a break room dedicated to expressing breast milk (the "Expression Room").

11.    After Plaintiff returned to work, she began to take breaks at work to express milk in the Expression Room.  These breaks lasted about 10 minutes each and were taken roughly every

two hours, including during her meal break, totaling approximately three breaks on an eight-hour shift.

12. However, Corporal Holly Satterwaithe ("Corp. Satterwaithe"), who had supervisory authority over Plaintiff Hudson, soon began discouraging and preventing Plaintiff from using the Expression Room.

13. When Plaintiff would ask permission to pump, Corp. Satterwaithe would become noticeably irritated, and began subjecting Plaintiff to negative treatment and comments.

14. For example, in or around December 2023, in response to Plaintiff's request to use the Expression Room to pump, Corp. Satterwaithe responded, "you're getting on my nerves with lactating; put your baby on Similac."

15. Corp. Satterwaithe also expressed to Plaintiff that she should not bother expressing milk for her child, because all she could produce was "dust."

16. From approximately December 2023 onward, Corp. Satterwaithe made similar disparaging remarks towards Plaintiff Hudson and repeatedly discouraged her from expressing milk.

17. Corp. Satterwaithe also engaged in harassing behavior, and on some occasions, would closely follow Plaintiff around the office, to provoke a reaction from Plaintiff (which reaction did not occur).

18. Corp. Satterwaithe also discriminated against Plaintiff by skipping Plaintiff for preferential lunch breaks and giving the breaks to other employees, even though Plaintiff was entitled to the preferential breaks.

19. Corp. Satterwaithe further discriminated against Plaintiff, by telling supervisors not to give Plaintiff overtime hours, thus decreasing Plaintiff's opportunities to earn higher overtime

compensation.

20.    Corp. Satterwaithe also permitted and encouraged others in the workplace, such as Latifa Baashit, to bully and make inappropriate comments towards Plaintiff in the workplace relating to expressing milk.

21.    Plaintiff made complaints regarding the foregoing discriminatory and harassing behavior of Corp. Satterwaithe to more senior officers, including Chief inspector Francis, but Defendant did nothing to rectify the situation.

22.    In or around September 2023, Corp. Satterwaithe began denying Plaintiff use of the Expression Room.

23.    In or around October 2023 through January 2024, because Plaintiff was no longer permitted to express milk at work, on more than 1 occasion, she leaked through her shirt, in front of her coworkers, causing Plaintiff significant embarrassment and humiliation.

24.    In or around December 2023, Corp. Satterwaithe unlawfully locked the Expression Room, for the purpose of preventing Plaintiff from being able to express breast milk in the workplace.

25.    As a result of Corp. Satterwaithe's and Defendant's callous disregard of Plaintiff's rights under the PUMP Act, by in or around February 2024, Plaintiff Hudson's milk dried up, and she was no longer able to feed her daughter breastmilk.  Plaintiff's daughter was forced to be fed formula, which made her sick and denied her key nutrition from breastmilk.

26.    Plaintiff suffered serious humiliation and emotional distress from being denied reasonable breaks to express breast milk, as well as from witnessing her daughter Chloe being unable to benefit from the nutrition of breast milk and being sick from drinking formula.

27.    On or about December 8, 2023, Plaintiff filed an internal EEO complaint with

Internal Affairs concerning the lack of expression accommodation and the harassment by Corp. Satterwaithe.

28.    Plaintiff's complaint was referred to the City of Philadelphia Department of Labor ("PDOL").

29.    On or about April 24, 2025, PDOL released "Notice of Findings," Ex. B, in which it determined that Corp. Satterwaithe "engaged in prohibited conduct under the City of Philadelphia Sexual Harassment Prevention Policy, PPD Directive 8.18, and the Mayor's Statement of Policy on Equal Employment Opportunity."

30.    On or around April 24, 2025, Corp. Satterwaithe became aware of the PDOL's ruling, after which her expressed animus and harassment against Plaintiff increased.

31.    On or about April 25, 2025, Plaintiff overheard Corp. Satterwaithe discussing the Notice of Findings to Baashit and another coworker, explaining that she did nothing wrong and that she could not understand how she was found guilty of violating policy.

32.    During the period of approximately May 2025 through approximately June 2025, Plaintiff did not work with or around Corp. Satterwaithe.

33.    In or around June 2025, on a day when Corp. Satterwaithe was assigning lunch breaks, Corp. Satterwaithe intentionally skipped Plaintiff numerous times, giving the preferential lunch breaks to others who arrived at work after Plaintiff. This was in retaliation for Plaintiffs' complaint and the PDOL findings. On this day, Corp. Satterwaithe made a highly inappropriate comment to Plaintiff. Plaintiff was made extremely uncomfortable by the comment, and in response, rose from her seat to walk away and address this situation not with Corp. Satterwaithe, but with the Sergeant on duty, Sgt. Wilson. As Plaintiff was walking towards Sgt. Wilson's desk, Corp. Sattwaithe continued to follow Plaintiff and scream at Plaintiff, saying that no matter what

Plaintiff did, Satterwaithe was untouchable and nothing would happen to her.

34.    The following day, Corp. Satterwaithe told Plaintiff that she was writing Plaintiff up for "insubordination" and that she would have Plaintiff fired.

35.    In or around June 2025, following Corp. Satterwaithe's comment that she was going to have Plaintiff fired, Plaintiff complained to Chief Inspector Deborah Francis about Corp. Satterwaithe's continued harassment of Plaintiff. However, Chief Inspector Francis made it clear to Plaintiff that she was going to listen to Corp. Satterwaithe, not Plaintiff, regarding Plaintiff's complaints about Corp. Satterwaithe's harassment.

36.    From in or around June through the end of the AFSCME DC 33 strike in or around July 2025, Plaintiff again did not have to work with or around Corp. Satterwaithe.

37.    However, after the strike ceased in or around July 2025, Plaintiff and Corp. Satterwaithe began working together again. From that time through about October 2025, Plaintiff made all efforts to try to avoid working with or being around or near Corp. Satterwaithe.

38.    In or around October 2025, Corp. Satterwaite was harassing and attempting to get a rise out of Plaintiff, intimating that she would physically harm Plaintiff. When Plaintiff asked, "is that a threat," Corp. Satterwwaithe responded, "I will take this uniform off and take you outside," indicating that Corp. Satterwaithe desired to physically harm Plaintiff.

39.    After the October 2025 incident, Plaintiff was experiencing severe depression, stress and anxiety about having to go to work each day and being subjected to Corp. Satterwaithe's harassment and bullying, especially since supervisors such as Chief Inspector Francis had made it clear to Plaintiff that they were not going to do anything to resolve the hostile work environment Plaintiff was experiencing.  Plaintiff feared not only for her job, but also for her physical safety.

40.    Also in or around October 2025, Plaintiff was overwhelmed and began requesting

6

to use her PTO leave 1-2x per week, to protect her mental and physical health. Plaintiff's use of PTO was approved. Plaintiff never took an unapproved day off from work.

41.     However, the harassment continued, nothing was being done about it, and Plaintiff felt that she needed to take additional time away from work to avoid the hostile work environment and the severe stress and anxiety it was causing her.

42.     On or around November 18, 2025, Plaintiff spoke to Sergeant Wilson about taking a leave of absence to take off from work for about 30-60 days, again to avoid the hostile work environment and the stress and anxiety it was causing her.

43.     Sgt. Wilson suggested that Plaintiff make a formal request to take a medical or personal leave of absence.

44.     Plaintiff was told by Heather McCafferty at PPD human resources that, once her request for a leave of absence was submitted, a 3-month period of leave would begin immediately.

45.     On or around November 20, 2025, Plaintiff put in a request to Corporal Clark and human resources to take a personal leave of absence.

46.     Some time between December 4, 2025 and December 10, 2025, while Plaintiff was already on leave, Plaintiff heard informally that her employment was terminated.

47.     On or about December 10, 2025, Plaintiff received a termination letter from HR, stating that she was terminated because she did not apply for a leave of absence, which was false.

48.     Plaintiff was terminated in retaliation for making protected complaints regarding Defendant's failure to provide an Expression Room and the associated harassment she was forced to endure in relation to her requests to pump and complaints regarding harassment.

49.     Plaintiff suffered further emotional distress from Defendant terminating her employment merely for asserting her rights under the PUMP Act.

7

**Willfulness**

50.    After she returned to work from giving birth to Chloe, Plaintiff Hudson regularly sought to express breastmilk in the Expression Room.

51.    Although Defendant was at all relevant times fully aware of the requirements of the PUMP Act, Defendant willfully refused Plaintiff Hudson reasonable break times to express breast milk, and also willfully refused to provide Plaintiff access to a private space to express breast milk.

52.    Defendant is a sophisticated public agency providing law enforcement services to a major United States city.  Defendant has extensive experience in labor and employment issues and enjoys access to knowledgeable human resource specialists and competent labor counsel.

53.    Defendant acted willfully and with reckless disregard of clearly applicable PUMP Act provisions by failing to provide Plaintiff Hudson reasonable break times to express breast milk, and to provide Plaintiff Hudson access to a private space to express breast milk during such reasonable break times.

## COUNT I – FAILURE TO ACCOMMODATE BREASTFEEDING
### 29 U.S.C. §§ 216(b), 218d

54.    All previous paragraphs are incorporated as though fully set forth herein.

55.    The FLSA and PUMP Act require that covered employees be provided, "a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the child's birth each time such employee has need to express the milk," and "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk."  *See* 29 U.S.C. § 218d(a)(1),(2).

56.    Defendant is subject to the requirements of the PUMP Act because Defendant is an "employer" under 29 U.S.C. § 203(d).

57.     During all relevant times, Defendant was an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

58.     During all relevant times, Plaintiff was a covered employee entitled to the above-described FLSA protections.  *See* 29 U.S.C. § 203(e).

59.     Plaintiff is not exempt from the requirements of the FLSA.

60.     Defendant failed to comply with 29 U.S.C. § 218d by failing to provide Plaintiff reasonable break times to express breast milk, and also willfully refused to provide Plaintiff access to a private space to express breast milk.

61.     Defendant knowingly failed to accommodate Plaintiff's desired breastfeeding, in violation of 29 U.S.C. § 218d.

62.     In violating the FLSA and PUMP Act, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

63.     Pursuant to 29 U.S.C. § 216(b), employers such as Defendant, who fail to comply with the PUMP Act's breastfeeding accommodations shall be liable to the employee for compensatory and punitive damages, as well as court costs and attorneys' fees.

## COUNT II – RETALIATION
### 29 U.S.C. §§ 216(b), 215(a)(3)

64.     All previous paragraphs are incorporated as though fully set forth herein.

65.     It is unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA and PUMP Act]." *See* 29 U.S.C. § 215(a)(3).

66.     The FLSA and PUMP Act requires that covered employees be provided, "a reasonable break time for an employee to express breast milk for such employee's nursing child

for 1 year after the child's birth each time such employee has need to express the milk," and "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." *See* 29 U.S.C. § 218d(a)(1), (2).

67.     As previously explained, Defendant willfully refused to provide Plaintiff reasonable break times to express breast milk, and also willfully refused to provide Plaintiff access to a private space to express breast milk.

68.     Plaintiff engaged in protected activity when she repeatedly sought to invoke milk expression breaks.

69.     Plaintiff further engaged in protected activity when she complained about the lack of breaks, private space access, and inappropriate comments and harassment regarding breastfeeding on numerous occasions.

70.     Defendant retaliated against Plaintiff by harassing her and creating a hostile work environment, as well as by eventually terminating her employment in response to Plaintiff's protected activity.

71.     Plaintiff's protected activity was the direct and proximate cause of Defendant's creation of a hostile work environment, as well as the eventual termination of her employment.

72.     Plaintiff suffered significant emotional distress as a result of enduring a hostile work environment, as well as from the termination of her employment.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hudson seeks the following relief:

a.  Compensatory and punitive damages as a result of Defendant's failure to accommodate Plaintiff's milk expression to the fullest extent permitted under the law;

b.  Back pay, front pay, liquidated damages, compensatory and punitive damages as a result of Defendant's retaliation against Plaintiff for asserting her rights under the PUMP Act, to the fullest extent permitted under the law;

c.  Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

d.  Such other and further relief as this Court deems just and proper.

Date:   July 1, 2026

**GOODLEY MCCARTHY LLC**

/s/ James E. Goodley
James E. Goodley
Attorney I.D. No. 315331
Ryan P. McCarthy
Attorney I.D. No. 323125
1650 Market Street, Suite 3600
Philadelphia, PA 19103
james@gmlaborlaw.com
ryan@gmlaborlaw.com

*Counsel for Plaintiff*

11